UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICHARD C. KREKLAU,

       Plaintiff,

       v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

Civil No. 06-1571-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

      Plaintiff Richard Kreklau brings this action pursuant to 42 U.S.C. § 405(g) of the Social

Security Act (the Act). Plaintiff requests judicial review of a final decision by the Commissioner

of the Social Security Administration (SSA) denying his application for disability insurance

benefits (DIB) and Supplemental Security Income (SSI) payments. He seeks an order reversing

the Commissioner's decision and remanding this case for an award of benefits. This court has

jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). After reviewing the record of this case

1  - OPINION AND ORDER

and evaluating counsel's arguments, this court concludes that the Commissioner's decision must be affirmed.

## ADMINISTRATIVE HISTORY

Plaintiff protectively filed his applications for DIB and SSI benefits on October 18, 2001. Tr. 15.[1]  These applications were denied initially and upon reconsideration, and plaintiff requested a hearing before an Administrative Law Judge [ALJ].  After a hearing an ALJ concluded that plaintiff was not disabled.  Tr. 12-24.  After a denial of plaintiff's administrative appeals, plaintiff filed suit in this court.  The parties then agreed to a stipulated remand for further administrative proceedings, pursuant to which the ALJ was instructed to "re-evaluate and further develop the medial evidence of record," re-evaluate plaintiff's residual functioning capacity (RFC), and re-evaluate the fourth and fifth steps of the statutory five-step sequential evaluation process for determining if a person is eligible for benefits because of disability.  *See* Order issued July 29, 2005 in Civil No. 04-1475-BR.

After a second hearing, a different ALJ issued another decision finding plaintiff not disabled.  Tr. 277-92.  This decision is the subject of plaintiff's federal action before this court.

## FACTUAL BACKGROUND

Plaintiff was born on May 14, 1960, and was thirty-nine years old on his alleged disability onset date of July 1, 1999, so is considered a "younger individual" for evaluative purposes.  Tr. 290; see also 20 C.F.R. §§ 404.1563(b), 416.963(b).

---

1       Citations beginning with "Tr." refer to pages in the official transcript of the administrative record filed with the Commissioner's Answer.

2  - OPINION AND ORDER

Plaintiff completed his junior year of high school.  Tr. 71.   He has worked as a gas station attendant, construction worker, and forklift operator.  Tr. 290.  He has not performed substantial gainful activity (SGA) since the alleged onset date of disability.  Tr. 283.

Plaintiff alleges disability resulting from a combination of impairments, including:

> status post injuries to his neck and back areas; numbness in the hands, arms, legs, and feet areas; fractured nose; fractured pelvic bone; pain in all regions of his back; migraine headaches and nausea that are agitated by light sensitivity; muscle cramping and burning of his neck area; diminished attention, concentration, and focus; inability to start and finish tasks without needing to take breaks; difficulty being around others; anxiety; and depression.

Pl.'s Brief at 2-3 (citing plaintiff's hearing testimony at Tr. 244-70).  This court will address details of plaintiff's medical history as necessary in this ruling.

## STANDARDS

To establish an eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits because of disability.  20 C.F.R. §§ 404.1520, 416.920; *see also Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

First, the Commissioner determines whether the claimant is engaged in SGA.  If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to step two and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe."  20 C.F.R. § 404.1520(a).  If

3   - OPINION AND ORDER

the claimant lacks this kind of impairment, disability benefits are denied.  20 C.F.R. §

404.1520(c).

If at least some of the claimant's impairments are severe, the Commissioner proceeds to

the third step to determine whether the impairment is equivalent to one or more impairments that

the Commissioner has recognized to be so severe that they are presumed to preclude SGA.  *See*

20 C.F.R. § 404.1520(d).  These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1

("Listing of Impairments").  If the claimant's condition meets or equals one in the Listing of

Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner proceeds

to the fourth step to determine whether the impairment prevents the claimant from engaging in

work that the claimant has performed in the past.  If the claimant is able to perform his or her

former work, a finding of "not disabled" is made and disability benefits are denied.  *See* 20

C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the

Commissioner proceeds to the fifth and final step to determine if the claimant can perform other

work in the national economy in light of his or her age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of

proof as to steps one through four.  Accordingly, the claimant bears the initial burden of

establishing his or her disability.

However, in step five, the burden shifts to the Commissioner to show there are a

significant number of jobs in the national economy that the claimant can perform given his or her

residual functional capacity (RFC), age, education, and work experience. *Hoopai*, 499 F.3d at 1074-75 (citations omitted).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act. *See* 20 C.F.R. § 404.1520(f)(1). If the Commissioner meets this burden, the claimant is deemed not disabled for purposes of determining benefits eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999) (citations omitted). Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citations and quotations omitted). This court must uphold the Commissioner's denial of benefits even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted).

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098 (quotation and citation omitted). The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) (citations omitted). A decision to deny benefits

may be set aside only if the ALJ's findings are based on legal error or are not supported by

substantial evidence in the record. *Benton*, 331 F.3d at 1035.

## SUMMARY OF THE ALJ'S FINDINGS

At step one of the Commissioner's five-step analysis, the ALJ found that plaintiff had not

engaged in SGA after his original alleged onset date of July 1, 1999. Tr. 283, Finding 2.

At step two, the ALJ identified plaintiff's severe impairments: "mild degenerative spine

disease, a major depressive disorder/adjustment disorder, a somatoform disorder (psychological

factors affecting physical condition), and a substance abuse (alcohol) disorder. Tr. 283, Finding

3 (citation omitted).

At step three, the ALJ concluded that plaintiff's impairments, either singularly or in

combination, did not meet or equal the requirements of a listed impairment in 20 C.F.R., Part

404, pt 404, subpt. P, app. 1. Tr. 285, Finding 4. The ALJ determined that plaintiff retained the

RFC to perform a reduced range of medium exertional work: lifting limited to fifty pounds

occasionally and twenty-five pounds frequently; climbing ladders or scaffolds and stooping

occasionally; hazardous conditions must be avoided; he cannot perform detailed and complex

tasks on a sustained basis and is capable of simple, repetitive tasks and is precluded from

production quotas and demands for a rapid pace; he should not have a lot of contact with the

public and has limited ability to formulate plans and goals. Tr. 285, Finding 5.

At step four, the ALJ concluded that plaintiffs could not perform his past relevant work.

Tr. 290, Finding 6. At step five, after eliciting Vocational Expert (VE) testimony, the ALJ

determined that plaintiff could perform other work that exists in significant numbers in the

national economy, including hand packager, marking clerk, and automated developer of photographs. Tr. 291, Finding 10.

## QUESTION PRESENTED

Plaintiff contends that this court should reverse the Commissioner's final decision and remand this action for an award of benefits. Primarily, plaintiff alleges that (1) the ALJ failed to give clear and convincing reasons for rejecting plaintiff's testimony; (2) the ALJ failed to develop the record properly; and (3) the Commissioner relied on "erroneous vocational testimony." Pl.s Brief at 9, 13 and 19. This court has examined each of plaintiff's arguments, and concludes that the Commissioner's decision is supported by substantial evidence and must be affirmed.

## DISCUSSION

### 1.        The ALJ rejected plaintiff's testimony properly

Plaintiff first argues that the ALJ erred by giving inadequate reasons for rejecting plaintiff's testimony. Pl.'s Brief at 13.

In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (quoting *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Medical evidence is a "relevant factor" in determining the severity of a claimant's pain and its effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in a credibility analysis. *Id.*; *see also Burch*, 400 F.3d at 681.

7  - OPINION AND ORDER

In addition to medical evidence, factors relevant to the ALJ's credibility determination include:  a plaintiff's daily activities; the location, duration, frequency, and intensity of his or her symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment, other than medication; measures used to relieve symptoms; and functional limitations caused by the symptoms.   *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see also* 20 C.F.R. § 404.1529(c)(3).

 If an ALJ finds that a claimant's testimony relating to limitations is unreliable, the ALJ must make a credibility determination citing the reasons why that testimony is unpersuasive.  *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  The ALJ must identify specifically what testimony is credible and what testimony undermines the claimant's complaints.  *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citation omitted); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The Ninth Circuit set out a threshold test in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (reaffirmed in *Bunnell*) to assist the ALJ in deciding whether to accept a claimant's subjective symptom testimony.  If the claimant produces evidence that meets the test, and there is no evidence of malingering, then the ALJ can reject the claimant's testimony about the severity of symptoms only by offering specific, clear, and convincing reasons for doing so.  *See Dodrill*, 12 F.3d at 918.

Under this analysis, a claimant who alleges disability based on subjective symptoms must meet two tests.  The first prong of the test requires that the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce

the pain or other symptoms alleged. . . .'" *Bunnell*, 947 F.2d at 344 (quoting 42 U.S.C. §

423(d)(5)(A) (1988)); *see also Cotton*, 799 F.2d at 1407; *Smolen*, 80 F.3d at 1281-82.

Second, the claimant must show that the impairment or combination of impairments

could reasonably be expected to produce some degree of symptom. *Smolen*, 80 F.3d at 1282.

Notably, this evidence need not establish that the impairments caused the symptom or the

severity of it as alleged by the claimant:

> Nor must the claimant produce objective medical evidence of the
> causal relationship between the medically determinable
> impairment and the symptom. By requiring that the medical
> impairment "could reasonably be expected to produce" pain or
> another symptom, the *Cotton* test requires only that the causal
> relationship be a reasonable inference, not a medically proven
> phenomenon. Finally, the claimant need not show that her
> impairment could be expected to cause the severity of
> the symptom she has alleged; she need only show that it could
> reasonably have caused some degree of the symptom. This
> approach reflects the highly subjective and idiosyncratic nature of
> pain and other such symptoms. . . . Thus, the ALJ may not reject
> subjective symptom testimony under the *Cotton* analysis simply
> because there is no showing that the impairment can reasonably
> produce the *degree* of symptom alleged (emphasis in original).

*Smolen*, 80 F.3d at 1282 (citing *Bunnell*, 947 F.2d at 347-48).

"The ALJ must state specifically which symptom testimony is not credible and what facts

in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. In determining that subjective

testimony is not credible, the ALJ may rely on:

> (1) ordinary techniques of credibility evaluation, such as the claimant's
> reputation for lying, prior inconsistent statements concerning the
> symptoms, and other testimony by the claimant that appears less than
> candid; (2) unexplained or inadequately explained failure to seek
> treatment or to follow a prescribed course of treatment; and (3) the
> claimant's daily activities.

*Id.* (citations omitted).

If the plaintiff has met the burden of showing that his or her impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of the symptoms that plaintiff's testimony describes, and there is no evidence suggesting that the plaintiff is malingering, the ALJ may not reject testimony regarding the severity of plaintiff's symptoms unless there are clear and convincing reasons for doing so. *Id.* at 1283; *see also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citation omitted).

Moreover, the ALJ is required to specify what testimony is not credible and identify the evidence that undermines the claimant's complaints – general findings are insufficient. *Burch*, 400 F.3d at 680 (citations and quotation marks omitted). The ALJ is not permitted to disbelieve a plaintiff simply because no objective medical evidence supports the plaintiff's testimony regarding the severity of subjective symptoms from which the plaintiff suffers, particularly pain. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) (citations and quotations omitted). To find a plaintiff not credible, the ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), or upon conflicts between the plaintiff's testimony and conduct, or upon internal contradictions in that testimony. *Id.* (citation and quotations omitted).

The ALJ must provide a "narrative discussion" containing specific reasons for the finding and supported by the evidence in the record, and is required to "make clear" the weight the adjudicator gave to the individual's statements and the reasons for that weight. *Id.* (citing Social Security Ruling ((SSR)) 96-7p and SSR 96-8p).

"While an ALJ may certainly find testimony not credible and disregard it as an unsupported, self-serving statement," a court cannot affirm such a determination "unless it is

supported by specific findings and reasoning." *Robbins*, 466 F.3d at 884-85 (internal quotation and citation omitted).

In this case, the ALJ cited several specific reasons for viewing plaintiff's credibility as diminished. Evidence of plaintiff's malingering was presented and considered by the ALJ. *See* Tr. 289. The ALJ addressed specifically the opinion of Delmar Greenleaf, M.D., who assessed "[m]ultiple findings that are most consistent with malingering behavior, with five out of five positive Waddell signs,[2] invalid sensory neurologic exam and invalid muscular strength exam, with collapsing and giving-way throughout. . . . Otherwise, very robust musculoskeletal neurologic system." Tr. 463; cited by the ALJ at Tr. 289. Doctor Greenleaf performed a comprehensive examination of plaintiff, and concluded that his "muscle strength tests are invalid, with pain behavior." Tr. 463.

Affirmative evidence of malingering, such as the evidence that has been presented in this case, can obviate the need to show clear and convincing reasons to reject the subjective assertions of a claimant. *Lester*, 81 F.3d at 834. Moreover, the ALJ properly examined the objective medical support to evaluate plaintiff's claim of worsening spinal conditions and headaches.

The ALJ referred to the analysis provided by Mark Belza, M.D., who interpreted six x-ray views of plaintiff's cervical spine as revealing only mild arthrosis and disc height loss, which he deemed common for someone plaintiff's age. Tr. 284, citing Tr. 389.

---

2    The Ninth Circuit has held that an ALJ may properly rely on the presence of Waddell's signs as an indication that a claimant's testimony was unreliable. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2000).

The ALJ also referred to the findings of Richard Koller, M.D., who concluded that plaintiff's neurologic examination was unremarkable except for collapsing weakness and "voluntary guarding" which prevented range of motion testing.  Tr. 284, citing Tr. 395. Similarly, the ALJ acknowledged the evaluation of plaintiff's spinal views that Ronald Hanson, M.D., performed on January 29, 2002, in which the doctor concluded that there was normal alignment and no significant disc space narrowing.  Tr. 286, citing Tr. 159.

An ALJ may also evaluate credibility by considering inconsistencies between a claimant's testimony and evidence of the claimant's activities of daily living.  *See Thomas*, 278 F.3d at 958-59.  Here, the ALJ concluded that plaintiff had engaged in activities that suggested his testimony was not credible.  Tr. 287-88.

The ALJ noted that plaintiff maintained and operated a motorcycle, provided care for a relative's children, completed housekeeping tasks, prepared meals for himself and others, cares for pets, and camps.  *Id.*, *see also* Tr. 89-92, 101-02, 208-09, 503.  Similarly, the ALJ noted that plaintiff collected garbage as part of a road crew.  Tr. 288, citing Tr. 326.  Evidence of these activities permitted the ALJ to view plaintiff's credibility as diminished.  *See Thomas*, 278 F.3d at 958-59.

An ALJ may also examine a claimant's inconsistent testimony when determining credibility.  *Id.*  The ALJ contrasted plaintiff's testimony from his first hearing with inconsistent reporting that plaintiff submitted to a doctor.  Tr. 288.  Plaintiff's unresolved inconsistencies in his statements provided further grounds for the ALJ's evaluation and conclusion.  *See Burch*, 400 F.3d at 680; *Tonapetyan*, 242 F.3d at 1148.

12 - OPINION AND ORDER

Finally, the ALJ's analysis of relevant psychological diagnoses bolstered his conclusion that plaintiff's testimony was less than credible in some respects.  The opinion of psychologist William Trueblood, Ph.D., was that plaintiff had a Global Assessment of Functioning score of 54. Tr. 150.  That score is indicative on only moderate limitations in social and occupational functioning.  *See* American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. 2000) (DSM-IV-TR).

This opinion was similar to the findings of psychologist Bill Hennings, Ph.D., who conducted a review of the evidence of record and concluded that plaintiff has moderate difficulties in maintaining social functioning and in maintaining concentration/persistence/pace, and mild restrictions of activities of daily living.  Tr. 166-83.

Other medical professionals made similar evaluations.  Psychologist Dick Wimmers, Ph.D., reviewed the evidence and affirmed Dr. Hennings' assessment.  Tr. 183.  Medical expert Susan Dragovich, Ph.D., testified at the hearing that she concurred with these findings (and others), and noted plaintiff's embellishment, exaggerated pain complaints, financial secondary gain, and self-limitation centered on reports of pain.  Tr. 513-20.  The ALJ noted these analyses and properly referred to them when making his credibility determination.  Tr. 287, 290.

This court concludes that the ALJ's determination that plaintiff's testimony was not entirely credible was properly supported by clear and convincing reasons, including but not limited to persuasive evidence presented in the record concerning plaintiff's malingering, his participation in activities inconsistent with his stated level of limitations, and his proffer of past testimony that was inconsistent with his reports to at least one physician.  Accordingly, the ALJ's credibility determination is upheld.  *See Reddick*, 157 F.3d at 722.

13 - OPINION AND ORDER

### 2.      The Commissioner met the duty to develop the record

Next, plaintiff contends that the ALJ failed to fulfill the duty to fully and fairly develop the record.  Plaintiff argues that "the ALJ improperly diminished all of plaintiff's physical complaints and limitations because of a lack of evidence or supporting medical opinion."  Pl.'s Brief at 13.  Plaintiff asserts that the ALJ "misused" his mental diagnosis against him because "the objective measurements . . . associated with physical . . . impairments may not be evidenced" in an individual suffering from somatoform disorder, such as plaintiff.  *Id.* at 13-14.

A claimant bears the initial burdens of proving disability.  However, the ALJ also has "a special duty to fully and fairly develop the record and assure that the claimant's interests are considered."  *Hayes v. Astrue*, 2008 WL 686867, *2 (Ninth Circuit March 12, 2008) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam).[3]

Some responsibility to develop the record rests with the ALJ in part because disability hearings are inquisitorial rather than adversarial in nature.  *See Sims v. Apfel*, 530 U.S. 103, 110-11 (2000).  Administrative regulations also mandate the ALJ to look "fully into the issues" at hearings.  20 C.F.R. §§ 404.944 and 416.1444; *see also Pearson v. Bowen*, 866 F.2d 809, 812 (5th Cir. 1989).

Fulfilling the duty to develop the record may compel the ALJ to consult a medical expert or to order a consultative examination.  *See* 20 C.F.R. §§ 404.1519a and 416.919a; *Armstrong v. Comm'r.*, 160 F.3d 587, 590 (9th Cir. 1998) (the ALJ may be required to call a medical expert to assist in determining when the plaintiff's impairments became disabling in cases in which

---

3      This duty extends to the represented as well as to the unrepresented claimant, but when the claimant is not represented by counsel, this duty requires the ALJ to be especially diligent in seeking all relevant facts.  *Id.*

diagnoses of mental disorders existed prior to the date of disability found by the ALJ and evidence of those disorders prior to the diagnoses).

If the evidence presented is inadequate to determine disability, the ALJ is required to re-contact the medical source for additional information. 20 C.F.R. § 416.912(e). *See also Thomas*, 278 F.3d at 958 (the requirement for seeking additional information is triggered when evidence from a treating medical source is inadequate to make a determination as to a claimant's disability).

Relatedly, an ALJ must take reasonable steps to ensure that issues and questions raised during the presentation of medical evidence are addressed so that the disability determination is fairly made on a sufficient record of information. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998, as amended Jan. 26, 1999); *see also* 20 C .F.R. §§ 404.1527(c)(3) and 416.927(c)(3) (explaining how an ALJ may obtain additional evidence where medical evidence is insufficient to determine whether claimant is disabled); 20 C.F.R. §§ 404.1512(e) and 416.912(e) (obtaining additional information from treating doctors).

However, if the record before the ALJ allows for the proper evaluation of the evidence, the duty to further develop the record is not triggered. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence") (citing *Tonapetyan*, 242 F.3d at 1150); *see also Harris v. Comm'r*, 2008 WL 533995, at *11 (E.D. Cal. February 27, 2008) (citing *Tonapetyan*, 242 F.3d at 1150) (duty to develop record is triggered if the evidence is ambiguous or upon the ALJ's finding that the record is inadequate).

Here, the record before the ALJ was neither ambiguous nor inadequate. A significant number of physicians and medical experts provided records and statements regarding plaintiff's physical and mental limitations. Direct medical analysis of plaintiff's somatoform disorder and affective disorder was provided by Peter LeBray, Ph.D., who reviewed the evidence of record and concluded that these disorders were not severe and imposed upon plaintiff only mild limitations. Tr. 289, citing Tr. 477-88. Also, Drs. Trueblood, Hennings, Wimmers, and Dragovich proffered opinions regarding plaintiff's mental limitations, and these opinions were derived from extensive psychological evaluations. *See* Tr. 143-50, 166-183, 513-20.

Plaintiff 's contention that the ALJ failed to develop the record properly, as stated in counsel's supporting brief, is more accurately construed as further argument that the ALJ erred in the analysis of plaintiff's credibility:

> The ALJ summarily found Plaintiff to not be credible and dismissed most, if not all, of Plaintiff's physical problems that prevent him from working. The ALJ relied on his erroneous reasoning that the record did not contain the type of diagnosed conditions that could account for Plaintiff's complaints. (Tr. 284-285).
>
> The ALJ stated that Plaintiff's allegations were disproportionate to the medical record. (Tr. 285). However, this is what the ALJ should have expected given the accuracy of the somatoform diagnosis. Instead, the ALJ improperly found the inconsistent complaints with the medical record served only one purpose, to reject Plaintiff entirely. The ALJ was wrong. The ALJ should have developed the record by having Plaintiff be examined thoroughly to address the problem associated with the somatoform disorder.

Pl.'s Brief at 14-15.

Counsel's attempt to conflate a challenge to the ALJ's credibility determination of plaintiff with a contention that the record should be developed further is rejected. Plaintiff's

credibility determination is free from error for the reasons already provided in this ruling.

Moreover, the record before the ALJ was unambiguous and allowed for the proper evaluation of

the evidence.  Accordingly, the duty to further develop the record was not triggered.  *Mayes*, 276

F.3d at 459-60.

### 3.    The ALJ did not rely upon 'erroneous vocational testimony'

Finally, plaintiff argues that the ALJ erred by relying upon testimony from the VE.

Specifically, plaintiff complains that a person limited to simple and repetitive tasks and no

demand for rapid pace or production quotas, as the ALJ's hypothetical question described, should

not have been considered capable of performing work that the VE identified as appropriate for

plaintiff.  Plaintiff argues that these tasks require more than simple tasks, may not be repetitive,

and "violate the rapid pace with quota expectation limit."  Pl.'s Brief at 19-20.

As noted above, a claimant bears the initial burden of establishing his or her disability as

to each of the steps one through four of the sequential evaluation process.  If the claimant is

unable to perform work that he or she has performed in the past, the Commissioner proceeds to

the fifth and final step to determine if the claimant can perform other work in the national

economy in light of his or her age, education, and work experience.  *See* 20 C.F.R. §

404.1512(c).

This court has reviewed the ALJ's analysis of the relevant medical evidence and of

plaintiff's RFC and concludes that the RFC analysis is supported by substantial evidence.

Similarly, the hypothetical questioning presented to the VE, and the ALJ's subsequent

interpretation of the testimony elicited from the VE, was proper.  *See Magallanes v. Bowen*, 881

F.2d 747, 756-57 (9th Cir. 1989) (an ALJ is not bound to accept as true any restrictions

17 - OPINION AND ORDER

presented in a hypothetical question propounded by a claimant's counsel, but may choose to accept these restrictions if they are supported by substantial evidence).

In this case, as noted above, the ALJ determined that plaintiff retained the RFC to perform a reduced range of medium exertional work and is capable of simple, repetitive tasks but is precluded from production quotas and demands for a rapid pace; he should not have a lot of contact with the public and has limited ability to formulate plans and goals.  Tr. 285, Finding 5.

After determining that plaintiff could not perform his past relevant work, the ALJ properly addressed whether other work existed in significant numbers in the national economy that plaintiff could perform.  The ALJ took testimony from a VE for this purpose.  This was proper.  *See Tackett*, 180 F.3d at 1099.  The RFC finding and the hypothetical questioning posed to the VE appropriately included only limitations "based on medical assumptions supported by substantial evidence in the record that reflect[ed] all the claimant's limitations." *Osenbrock*, 240 F.3d at 1165 (citation omitted).  In response to this proper questioning, the VE identified jobs that plaintiff could perform that exist in significant numbers in the national economy, including a marking clerk, a hand packager, or an automatic developer of photographs.  Tr. 523.

The Dictionary of Occupational Titles (DOT) is a publication of the United States Department of Labor containing descriptions of the requirements for thousands of jobs that exist in the national economy.  Definitions provided by the DOT are generic and offer "the approximate maximum requirements for each position, rather than their range." *Jones v. Chater*, 72 F.3d 81, 82 (8th Cir. 1995).

The DOT specifies the general educational requirements (GED) including the level of reasoning skills required for each job.  The GED is a measure of an individual's educational

achievement in reasoning, math, and language, and considers aspects of education, either

obtained by formal schooling or that which is obtained from experience and self-study. WL

DICOT Appendix C.

The DOT also rates "specific vocational preparedness" (SVP). The SVP is defined as the

amount of time a typical worker requires to learn the techniques, acquire the information, and

develop the facility needed for average performance in a specific job. WL DICOT App. C

(Components of the Definition Trailer). A listing in the DOT that indicates unskilled work does

not address whether a job requires only simple, repetitive tasks:

> A job's SVP is focused on "the amount of lapsed time" it takes for
> a typical worker to learn the job's duties. DOT at 1009. A job's
> reasoning level, by contrast, gauges the minimal ability a worker
> needs to complete the job's tasks themselves.

*Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005).

As noted above, the VE identified jobs as a marking clerk, hand packager or automatic

developer of photographs as employment that someone with plaintiff's limitations could perform.

Tr. 522-23. The DOT lists those jobs as having an SVP of 2, which corresponds to unskilled

work and is viewed as simple work requiring little or no judgment. 20 C.F.R. §§ 404.1568(a),

416.968(a).

There is also no dispute that these jobs are also are rated at GED Reasoning Level 2.

This type of work involves simple, routine, repetitive, concrete, tangible tasks. *Meissl*, 403 F.

Supp. 2d at 984-85.

Plaintiff contends that the VE's testimony that someone with plaintiff's limitations could

perform these jobs is inconsistent with the DOT listings, and that this case must be remanded for

further analysis.  However, because there is no meaningful inconsistency between the VE's

testimony and the DOT, this argument is rejected.

Evidence provided by a VE "generally should be consistent with the occupational

information supplied by the DOT":

> When there is an apparent unresolved conflict between [VE
> evidence] and the DOT, the adjudicator must elicit a reasonable
> explanation for the conflict before relying on the [VE evidence] to
> support a determination or decision about whether the claimant is
> disabled.  At the hearings level, as part of the adjudicator's duty to
> fully develop the record, the adjudicator will inquire, on the
> record, as to whether or not there is such consistency.  Neither the
> DOT nor the [VE evidence] automatically "trumps" when there is a
> conflict.  The adjudicator must resolve the conflict by determining
> if the explanation given by the VE . . . is reasonable and provides a
> basis for relying on the [VE testimony] rather than on the DOT
> information.

SSR 00-4p.

Plaintiff contends that because he was viewed as being limited to simple, repetitive tasks

and precluded from production quotas and demands for a rapid pace, the jobs identified by the

VE are inappropriate because they are rated as GED Reasoning Level 2 by the DOT.

A GED Reasoning Level of 2 requires the application of "commonsense understanding to

carry out detailed but uninvolved written or oral instructions" and also dealing with problems

"involving a few concrete variables in or from standardized situations."  DOT, Appendix C.

Although the DOT definition states that level two jobs require the ability to carry out detailed

instructions, "it specifically caveats that the instructions would be uninvolved and not require a

high level of reasoning."  *Meissl*, 403 F. Supp. 2d at 985 (citing *Flaherty v. Halter*, 182 F.

Supp.2d  824, 850 (D. Minn. 2001)).

As noted, the DOT indicates that each of the jobs identified by the VE have an SVP of

20 - OPINION AND ORDER

2, corresponding to unskilled work, and a GED of 2,corresponding to simple, routine, repetitive work. These rankings are consistent. *See Hackett v. Barnhart*, 395 F.3d 1168, 1175-76 (10th Cir. 2005) (level-two reasoning appears consistent with a RFC that limits a claimant to simple and routine work tasks); *Meissl*, 403 F. Supp. 2d at 984 (reasoning level two requires a worker to follow "detailed" instructions, but downplays the rigorousness of those instructions by labeling them as "uninvolved" instructions).

Jobs identified by the DOT to be at such levels fall within the parameters established by the ALJ's conclusions regarding plaintiff's RFC and limitations. The VE's testimony is fairly construed as consistent with the DOT. The ALJ's duty to elicit a reasonable explanation for any unresolved conflict between the VE evidence and the DOT is, therefore, not triggered here. This court concludes that the VE's testimony did not contradict the limitations presented by the ALJ, and that the DOT definitions, properly considered, fail to invalidate such testimony. Plaintiff's objections in this regard are overruled.

The hypothetical questioning submitted to the VE was consistent with, and supported by, the objective medical evidence presented. Because the ALJ's hypothetical questioning was based upon substantial evidence in the record, this court concludes that the ALJ's reliance upon the VE's testimony in finding that plaintiff could perform other work was proper. *See Osenbrock*, 240 F.3d at 1164-65 (citations omitted).

## **CONCLUSION**

Based on the foregoing, the findings of the Commissioner are based upon the correct legal standards and are supported by substantial evidence in the record. The final decision of the

Commissioner denying plaintiff Richard C. Kreklau's applications for DIB and SSI benefits is AFFIRMED.

IT IS SO ORDERED.

DATED this ___31___ day of March, 2008.

  _/s/ ANCER L. HAGGERTY___
ANCER L. HAGGERTY
United States District Judge

22 - OPINION AND ORDER